William E. Thomson, Jr. (SBN 47195)
wthomson@brookskushman.com
**BROOKS KUSHMAN P.C.**
445 S. Figueroa Street, Suite 3100
Los Angeles, CA 90071-1635
Tel: (213) 622-3003

Mark A. Cantor (*Pro Hac Vice* forthcoming)
Rebecca J. Cantor (*Pro Hac Vice* forthcoming)
Marc Lorelli (*Pro Hac Vice* forthcoming)
mcantor@brookskushman.com
rcantor@brookskushman.com
mlorelli@brookskushman.com
**BROOKS KUSHMAN P.C.**
1000 Town Center, Twenty-Second Floor
Southfield, MI 48075
Tel: (248) 358-4400/Fax: (248) 358-3351

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERABODY, INC., a Delaware corporation,<br><br>          Plaintiff,<br><br>v.<br><br>HOMEDICS USA, LLC; FKA DISTRIBUTING CO., LLC d/b/a HOMEDICS LLC; and DOES 1 through 10, inclusive,<br><br>          Defendant. | Case No. 2:21-cv-09882-SVW (ASx)<br><br>Hon. Stephen V. Wilson<br>Magistrate Judge Alka Sagar<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Judge: Stephen V. Wilson<br>Courtroom: 10A<br>Date: Monday, May 16, 2022<br>Time: 1:30 P.M. |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................. 1

II.    LEGAL STANDARD ........................................................................... 3

III.   ARGUMENT ....................................................................................... 3

    A.    Therabody Has Failed to State a Claim for Trade Dress Infringement ................. 3

        1.    Factual Background ....................................................... 3

            a.    The Alleged Blue Trade Dress ........................................ 3

            b.    The Alleged Triangle Trade Dress ................................ 5

        2.    Legal Principles ........................................................... 5

        3.    Argument ..................................................................... 6

            a.    Therabody Fails to Specifically Identify its Blue Trade Dress ........................................................... 6

            b.    Therabody Fails to Plead Facts Supporting Nonfunctionality ........ 8

            c.    Therabody Fails to Plead Facts Sufficient to Establish Secondary Meaning ..................................... 10

    B.    Therabody Has Failed to State a Claim for Patent Infringement ........................ 12

        1.    Factual Background ..................................................... 12

        2.    Legal Standard ........................................................... 16

        3.    Argument ................................................................... 17

            a.    Therabody Failed to Plausibly Allege Direct Infringement ......... 17

            b.    Therabody's Indirect Infringement Claims Are Nothing More Than a Recitation of the Elements of the Claims ............... 18

    C.    Therabody Has Failed to State a Claim for Design Patent Infringement ............ 20

        1.    Factual Background ..................................................... 20

        2.    Legal Standard ........................................................... 23

        3.    Argument ................................................................... 23

    D.    Therabody's Unfair Competition Claim Fails ..................................... 25

IV.   CONCLUSION ................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Kimberly-Clark Corp.*,
570 Fed. Appx. 927 (Fed. Cir. 2014)............................................................23

*Arminak and Associates v. Saint-Gobain Calmar*,
501 F.3d 1314 (Fed. Cir. 2007)....................................................................23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................3

*Beats Elecs., LLC v. Fanny Wang Headphone Co.*,
2011 U.S. Dist. LEXIS 2228 (N.D. Cal. Jan. 5, 2011) ......................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................3

*Cont'l Lab. Prod., Inc. v. Medax Int'l, Inc.*,
114 F. Supp. 2d 992 (S.D. Cal. 2000)...........................................................11

*Crocs, Inc. v. Int'l Trade Comm'n*,
598 F.3d 1294 (Fed. Cir. 2010).....................................................................23

*Curver Lux., SARL v. Home Expressions Inc.*,
938 F.3d 1334 (Fed. Cir. 2019).....................................................................23

*CytoSport, Inc. v. Vital Pharms., Inc.*,
617 F. Supp. 2d 1051 (E.D. Cal. 2009).........................................................11

*EFS Mktg., Inc. v. Russ Berrie & Co.*,
76 F.3d 487 (2d Cir. 1996).......................................................................6, 11

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008).......................................................................23

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,
925 F. Supp. 2d 1067 (C.D. Cal. 2012) ..........................................................8

*Gorham Manufacturing Co. v. White*,
81 U.S. 511 (1872)..........................................................................................23

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*,
2014 U.S. Dist. LEXIS 156675 (C.D. Cal. Nov. 5, 2014).................................8

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
681 F.3d 1323 (Fed. Cir. 2012)................................................................16, 19

*Marder v. Lopez*,
450 F.3d 445 (9th Cir. 2006) .........................................................................16

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
2020 U.S. Dist. LEXIS 219857 (C.D. Cal. Oct. 29, 2020)...........................8, 16

*N. Atl. Imps., LLC v. Nexgrill Indus.*,
2020 U.S. Dist. LEXIS 39729 (C.D. Cal. Jan. 23, 2020) ................................20

*Novitaz, Inc. v. inMarket Media, LLC*,
2017 U.S. Dist. LEXIS 81491 (N.D. Cal. May 26, 2017) ...............................16

*P & P Imps., LLC v. Festival Trading, Inc.*,
2018 U.S. Dist. LEXIS 225770 (C.D. Cal. May 15, 2018) ................................7

*Performance Designed Prods. LLC v. Mad Catz, Inc.*,
2016 U.S. Dist. LEXIS 84848 (S.D. Cal. June 29, 2016)......................23, 24, 25

*R & A Synergy LLC v. Spanx, Inc.*,
2019 U.S. Dist. LEXIS 168266 (C.D. Cal. May 1, 2019) .........................6, 9, 11

*Salt Optics, Inc. v. Jand, Inc.*,
   2010 U.S. Dist. LEXIS 131388 (C.D. Cal. Nov. 19, 2010)................................8

*SCG Characters LLC v. Telebrands Corp.*,
   2015 U.S. Dist. LEXIS 101287 (C.D. Cal. Aug. 3, 2015)..........................6, 7

*Secalt S.A. v. Wuxi Sehnxi Constr. Mach. Co.*,
   668 F.3d 677 (9th Cir. 2012) ....................................................................8

*Software Research, Inc. v. Dynatrace LLC*,
   316 F. Supp. 3d 1112 (N.D. Cal. 2018) ..........................................16, 17

*Spark Indus., LLC v. Kretek Int'l, Inc.*,
   2014 U.S. Dist. LEXIS 125538 (C.D. Cal. Aug. 28, 2014)......................11

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ................................................................17

*Traffix Devices v. Mktg. Displays*,
   532 U.S. 23 (2001)................................................................................10

*Uniloc USA v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011)............................................................16

*United States Ethernet Innovations, LLC v. Netgear, Inc.*,
   2013 U.S. Dist. LEXIS 113531 (N.D. Cal. Aug. 12, 2013).....................18

*Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*,
   2012 U.S. Dist. LEXIS 110974 (S.D.N.Y. Aug. 7, 2012)........................12

*Versata Software v. Configit A/S*,
   2021 U.S. Dist. LEXIS 230444 (C.D. Cal. Sep. 10, 2021)......................16

*Wal-Mart Stores v. Samora Bros, Inc.*,
   529 U.S. 205 (2000)..........................................................................6, 11

*Washoutpan.com v. Hd Supply Const. Supply Ltd.*,
   2019 U.S. Dist. LEXIS 231695 (C.D. Cal. Aug. 5, 2019)........................8

*Wistron Corp. v. Phillip M. Adams & Assocs., LLC*,
   2011 U.S. Dist. LEXIS 102237 (N.D. Cal. Sep. 12, 2011) ....................18

**Statutes**

35 U.S.C. § 271....................................................................................16

**Other Authorities**

Bus. & Prof. Code §17200................................................................1, 25

**Rules**

Fed. R. Civ. P. 12............................................................................3, 25

## I.    INTRODUCTION

Defendants HoMedics USA, LLC and FKA Distributing Co., LLC d/b/a HoMedics LLC (collectively, "HoMedics" or "Defendants") manufacture and sell a wide variety of health and wellness products. For years, HoMedics has sold percussion massagers. The HoMedics product at issue in this case is the Therapist Select DuoTemp Pro Percussion Massager (the "HoMedics Percussion Massager"). The HoMedics Percussion Massager allows users to target specific muscle groups for massage and also provides hot and cold therapy at the touch of the button. The HoMedics Percussion Massager is black and has a design that includes a semi-oval opening as shown in the image below:



Plaintiff Therabody, Inc. ("Therabody" or "Plaintiff") also makes and sells percussion massagers. At least some of Therabody's percussion massagers have a triangle-shaped opening and contain the color blue. And the head of the Therabody percussion massagers is in line with the handle—it does not protrude. Therabody owns several utility patents related to percussion massagers, each of which requires a triangle shaped opening that allows a user to grab any one of the three portions of the triangle. Therabody also owns several design patents that generally claim a percussion massager with a triangle opening and a head that is in line with the handle.

On December 22, 2021, Therabody filed a complaint against HoMedics alleging that the HoMedics Percussion Massager: (1) infringes Therabody's blue trade dress; (2) infringes Therabody's triangle trade dress; (3) infringes Therabody's utility patents both directly and indirectly; (4) infringes Therabody's design patents both directly and indirectly; and (5) violation of Cal. Bus. & Prof. Code §17200. As

described more thoroughly herein, however, Therabody's allegations attempting to support these causes of action fail to state a claim upon which relief can be granted.

With respect to Therabody's trade dress claims, Therabody has failed to plead facts sufficient to show that its trade dress is non-functional or has obtained secondary meaning. Further, with respect its purported blue trade dress, Therabody has failed to identify the blue trade dress with particularity.

With respect to Therabody's utility patent claims, Therabody has failed to allege facts sufficient to plausibly show that the HoMedics Percussion Massager has a triangle-shaped handle that allows users to independently grasp any of the first, second, and third handle portions—something that is required by each and every asserted claim. Moreover, while Therabody alleged induced infringement, it fails to allege: (1) that HoMedics knew of the asserted patents; (2) that HoMedics knowingly induced the infringing acts; or (3) that HoMedics specifically intended to encourage another's infringement. Similarly, while Therabody alleges contributory infringement, Therabody fails to: (1) identify the components allegedly sold; (2) allege facts showing that HoMedics knew it sold a component especially adapted to infringe; or (3) allege facts showing that the component has no substantially noninfringing uses.

With respect to Therabody's design patent claims, there are substantial differences between Therabody's asserted design patents and the HoMedics Percussion Massager, including but not limited to the shape of the handle, the location of the head, and the overall shape of the product. These differences preclude Therabody from showing that an ordinary observer would be deceived into believing the HoMedics Percussion Massager is the same as the patented designs—something Therabody must show to state a claim.

Finally, because Therabody's state law claim is based on the foregoing alleged trade dress and patent infringement it likewise fails to state a claim.

Based on the foregoing, and for the reasons set forth below, HoMedics respectfully requests the Court dismiss Therabody's Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

## II.   LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), a complaint should be dismissed if the complaint "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. "[T]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. Whether a complaint is plausible is "context-specific," and the reviewing court should "draw on its judicial experience and common sense." *Id.* at 679.

## III.   ARGUMENT

### A.   Therabody Has Failed to State a Claim for Trade Dress Infringement

#### 1.   Factual Background

Both Therabody and HoMedics sell percussive massage devices. According to Therabody, its percussive massagers contain protectable trade dress namely in the color blue and the triangle shape of its handle. (ECF No. 1 at ¶¶12, 22.)

##### a.   The Alleged Blue Trade Dress

Therabody claims that it began using a "distinctive blue color" in 2015. (ECF No. 1 at ¶12.) Rather than consistently using the same shade of blue in the same way on all of its products, as one would expect for protectable trade dress, Therabody has used varying shades of blue in different ways on different products as shown in the images below:



(*Id.* at ¶¶14-17.) In its Complaint, Therabody does not identify the specific shade of blue used or where it must be applied to constitute Therabody's trade dress. In other words, Therabody does not identify the elements its asserted Blue Trade Dress with the required specificity.

Therabody alleges that its Blue Trade Dress is nonfunctional but supports this allegation by merely reciting the factors to be considered in determining functionality stating that the color blue "does not provide a utilitarian advantage, a plethora of colors are available for use, and its use is not the result of a simple or inexpensive method of manufacture." (ECF No. 1 at ¶18.) Therabody provides no further elaboration on any of these factors. Therabody also alleges that its Blue Trade Dress is distinctive because Therabody has "sold millions of dollars of products bearing its distinctive color blue," "spent millions of dollars to promote its products bearing its distinctive color blue," and its products bearing the color blue have been used by "celebrities and professional athletes" and "have been the subject of extensive press and advertising.[1]" (*Id.* at ¶20.) Yet nowhere does Therabody allege facts showing that these advertisements

---

[1] Therabody also alleges that its Blue Trade Dress is inherently distinctive, but as discussed below, color can never be inherently distinctive.

emphasize the color blue on the Therabody products or that consumers who purchased the Therabody product associated the Blue Trade Dress with Therabody.

### b. The Alleged Triangle Trade Dress

Therabody claims that since 2019 it has used "triangle product design trade dress" in connection with the sale of percussion massagers as shown below:



(ECF No. 1 at ¶22.) According to Therabody, this Triangle Trade Dress consists of "(1) a percussive massage device generally in the shape of triangle; (2) a circular design or 'head' at one corner of the triangle; and (3) an arm to which massage head attachments are attached extending from the circular head." (*Id.* at ¶23.) Like with its Blue Trade Dress, Therabody alleges that its trade dress is nonfunctional because "it does not provide a utilitarian advantage, a plethora of alternative product shapes and designs are available for use, and their use is not the result of a simple or inexpensive method of manufacture." (*Id.* at ¶25.) Therabody also alleges that its Triangle Trade Dress has acquired secondary meaning[2] for the very same reasons that its Blue Trade dress had acquired secondary meaning, *i.e.*, based on sales, advertising, use by celebrities and mentions in the press. (*Id.* at ¶27.) And like with its Blue Trade Dress, Therabody does not allege fact showing that this advertising emphasizes the Triangle Trade Dress or that consumers associate the Triangle Trade Dress with Therabody.

### 2. Legal Principles

"To state a claim for trade dress infringement under the Lanham Act, a plaintiff

---

[2] Therabody again alleges that its triangle product design trade dress is inherently distinctive. (ECF No. 1 at ¶26.) Yet as described below, product design, like color, can never be inherently distinctive.

must first identify the trade dress at issue." *R & A Synergy LLC v. Spanx, Inc.*, No. 2:17-cv-09147, 2019 U.S. Dist. LEXIS 168266, at *9 (C.D. Cal. May 1, 2019). "Once the trade dress is defined," the plaintiff must then plead factual content that allows the court to draw the reasonable inference that: "(1) the trade dress is nonfunctional; (2) the trade dress is inherently distinctive or has acquired a 'secondary meaning' associated with the plaintiff's product; and (3) there is a substantial likelihood of confusion among consumers between the plaintiff's product and the defendant's product." *Id.*, at *9-*10 (citation omitted).

Product design trade dress is regarded with more suspicion than other forms of trade dress. As the Supreme Court explained,

> The fact that product design almost invariably serves purposes other than source identification not only renders inherent distinctiveness problematic; it also renders application of an inherent-distinctiveness principle more harmful to other consumer interests. Consumers should not be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinarily serves by a rule of law that facilitates plausible threats of suit against new entrants based upon inherent distinctiveness.

*Wal-Mart Stores v. Samora Bros, Inc.*, 529 U.S. 205, 213 (2000). Indeed, "consumers do not associate the design of a product with a particular manufacturer as readily as they do a trademark or a product-packaging trade dress. They are more likely to be attracted to the product for the product's features, rather than for the source-identifying role the feature might play." *EFS Mktg., Inc. v. Russ Berrie & Co.*, 76 F.3d 487, 491 (2d Cir. 1996).

### 3.   Argument

#### a.   Therabody Fails to Specifically Identify its Blue Trade Dress

In order to state a claim for infringement of its purported Blue Trade Dress, Therabody must describe its purported trade dress in detail. *See, e.g.*, *SCG Characters LLC v. Telebrands Corp.*, Case No. 15-00374, 2015 U.S. Dist. LEXIS 101287, at *20 (C.D. Cal. Aug. 3, 2015) ("Identifying the trade dress with particularity is important

given the general rule that 'generic product designs are unprotectable even upon showing of a secondary meaning.'") (quoting *Walker & Zanger, Inc. v. Paragon Indus., Inc.,* 549 F. Supp. 2d 1168, 1174 (N.D. Cal. 2007)). As discussed above, Therabody does not explain precisely what constitutes its Blue Trade Dress. Rather, it merely states that it has used the color blue and then provides exemplary images that show disparate use of that color. (ECF No. 1 at ¶¶14-17.) For example, some of the images show blue on nearly the entire handle, which others show blue only as a ring around the arm. (*Id.* at ¶¶15-17.) And it appears that some of Therabody's products don't include the color blue at all. (*Id.* at ¶22 (showing Therabody percussion massagers without the color blue when discussing Therabody's purported Triangle Trade Dress).) This is simply not enough to put HoMedics on notice of what exact trade dress Therabody is asserting.

Indeed, courts have previously held that trade dress was not sufficiently identified when a plaintiff did not identify where on the product a color had to be. For example, in *SCG*, the plaintiff alleged that its trade dress included, *inter alia*, brightly colored fur. *SCG*, 2015 U.S. Dist. LEXIS 101287, at *17. The court held that the plaintiff did not identify its trade dress with sufficient particularity because it failed to identify, among other things, the precise colors of fur used or where that fur had to be located on the toy. *Id.*, at *21. *See also P & P Imps., LLC v. Festival Trading, Inc.*, No. CV 17-1541, 2018 U.S. Dist. LEXIS 225770, at *22-26 (C.D. Cal. May 15, 2018). Like the plaintiff in *SCG*, Therabody has failed to identify where the color blue must be on its products and has therefore failed to identify its trade dress with particularity.

Therabody may try to argue that the pictures of its products are sufficient to identify where the blue must be located. As described above, however, these images are contradictory with blue being placed on different portions of the Therabody products. And courts have repeatedly held that pictures are not sufficient to specifically identify the asserted trade dress. *See Mosaic Brands, Inc. v. Ridge Wallet*

*LLC*, No. 2:20-cv-04556, 2020 U.S. Dist. LEXIS 219857, at *17 (C.D. Cal. Oct. 29, 2020) ("images and descriptions Plaintiff provides of some of its products are alone insufficient to put Defendant on notice of the asserted trade dress for those products or any others"); *Washoutpan.com v. Hd Supply Const. Supply Ltd.*, No. 2:19-cv-00494, 2019 U.S. Dist. LEXIS 231695, at *13-*15 (C.D. Cal. Aug. 5, 2019) (rejecting argument that attaching pictures of the trade dress suffices at the pleading stage); *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No. CV 14-03954, 2014 U.S. Dist. LEXIS 156675, at *8-*9 (C.D. Cal. Nov. 5, 2014) (dismissing claim where photograph and description "d[id] not sufficiently identify the particular elements" sought to be protected as trade dress). That is particularly true here where the images do not present a cohesive depiction of the alleged asserted trade dress.

Based on the foregoing, there can be no question that Therabody's description of its trade dress is plainly inadequate to put the HoMedics on notice of Plaintiff's claim. *See Salt Optics, Inc. v. Jand, Inc.*, Case No. 10-0828, 2010 U.S. Dist. LEXIS 131388, at *13-*17 (C.D. Cal. Nov. 19, 2010) (holding that the defendant was not given adequate notice of the claim against it where the plaintiff failed to identify its trade dress with sufficient particularity).

### b.    Therabody Fails to Plead Facts Supporting Nonfunctionality

"Under the Lanham Act, Congress imposes a presumption of functionality, and plaintiff bears the burden of proving nonfunctionality." *Secalt S.A. v. Wuxi Sehnxi Constr. Mach. Co.*, 668 F.3d 677, 683 (9th Cir. 2012) (overruled on other grounds). A feature is considered functional when it "constitute[s] the actual benefit the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product." *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 925 F. Supp. 2d 1067, 1073 (C.D. Cal. 2012) (quoting *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1980)). "The Ninth Circuit has developed a four-factor test to determine whether a product feature is functional:

(1) whether the design yields a utilitarian advantage; (2) whether alternative designs are available; (3) whether advertising touts the utilitarian advantage of the design; and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." *R & A*, 2019 U.S. Dist. LEXIS 168266, at *16-*17 (quotations omitted).

Here, despite having the burden of showing nonfunctionality, Therabody does not plead any facts sufficient to establish that its Blue Trade Dress or its Triangle Trade Dress is nonfunctional. Rather, Therabody merely repeats the factors set forth in *R&A* above, namely that the trade dress does not provide a utilitarian advantage, alternative designs/colors are available, and the trade dress is not the result of a simple or inexpensive method of manufacture. (ECF No. 1 at ¶¶18, 25.) In other words, Therabody's complaint merely contains a formulaic recitation of the elements of functionality—something that is clearly insufficient under *Twombly* and *Iqbal*. *See Iqbal*, 556 U.S. at 678.

Moreover, at least for the Triangle Trade Dress, there are reasons to believe the asserted trade dress is functional. As discussed above, Therabody defines the Triangle Trade Dress as "(1) a percussive massage device generally in the shape of triangle; (2) a circular design or 'head' at one corner of the triangle; and (3) an arm to which massage head attachments are attached extending from the circular head." (ECF No. 1 at ¶23.) Yet in the utility patents that Therabody asserts in this case, Therabody describes each of these elements as functional. For example, the specification of U.S. Patent No. 10,702,448 (the "'448 Patent" which is asserted in this case) describes that the handle is composed of three pieces that form an opening (*i.e.*, a triangle) and that this configuration enables a user to grasp any of the three pieces allowing "a person (when using the device on their own body) to use the device on different body parts and from different angles, thus providing the ability to reach body parts, such as the back, that might not be possible without the three handle portions." (ECF 1-1 at Col.

16, ll. 25-35.) Similarly, the '448 Patent describes that the reciprocating motion of the massager is driven by a rotation assembly which is shown as circular. (*Id.* at Col. 14, l. 54 – Col. 15, l. 26; FIG. 12.) It therefore is most efficient to design the head covering to be circular—any other design would necessarily contain extra material and would therefore be more expensive. Moreover, for the massage head to work it must be somehow connected to the rotation assembly (otherwise it would not move defeating the purpose of a percussion massager). The easiest way to do this is through a straight connection, *i.e.*, an arm. (*See id.* at Col. 15, ll. 5-10.) As such, there is a strong presumption that the trade dress is functional, and Therabody's complaint pleads no facts to overcome this presumption.[3] *See Traffix Devices v. Mktg. Displays*, 532 U.S. 23, 29-30 (2001) ("A utility patent is strong evidence that the features therein claimed are functional. If trade dress protection is sought for those features the strong evidence of functionality based on the previous patent adds great weight to the statutory presumption that features are deemed functional ***until proved otherwise by the party seeking trade dress protection***.") (emphasis added).

Therabody has failed to plead facts plausibly showing its asserted trade dress is nonfunctional and as such, has failed to state a claim for trade dress infringement.

### c.      Therabody Fails to Plead Facts Sufficient to Establish Secondary Meaning

In addition to failing to adequately identify its trade dress and plead nonfunctionality, Therabody also fails to plead facts sufficient to show that its asserted trade dress has obtained secondary meaning. As an initial matter it should be noted that contrary to Therabody's allegations, color and product design trade dress can never be inherently distinctive. *See Beats Elecs., LLC v. Fanny Wang Headphone Co.*, No. C-10-5680 MMC, 2011 U.S. Dist. LEXIS 2228, at *11-12 (N.D. Cal. Jan. 5, 2011) ("The Supreme Court has held, however, that where a claimed trade dress consists of

---

[3] While this section of the brief only discusses the '448 Patent, similar arguments can be made for each utility patent asserted by Therabody in this case.

'product design' and/or 'color,' the plaintiff cannot rely on inherent distinctiveness, but, rather, must show acquired distinctiveness by 'secondary meaning.'") (quoting *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211-15 (2000)). Thus, to state a claim for trade dress infringement, Therabody must allege facts sufficient to show that its trade dress has obtained secondary meaning. *See R & A*, 2019 U.S. Dist. LEXIS 168266, at *9. Here, Therabody has failed to sustain this burden.

"A plaintiff may establish secondary meaning through direct and circumstantial evidence." *Cont'l Lab. Prod., Inc. v. Medax Int'l, Inc.*, 114 F. Supp. 2d 992, 999 (S.D. Cal. 2000). "Direct evidence, such as consumer surveys and direct consumer testimony, often provides the strongest evidence of secondary meaning." *CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1079 (E.D. Cal. 2009) (internal citation omitted). A plaintiff may also "establish secondary meaning through circumstantial evidence, such as: exclusivity, manner, and length of use, amount and manner of advertising, amount of sales and the number of customers, and plaintiff's established place in the market." *Id.* (quotation omitted).

Here, Therabody does not plead any facts directed to direct evidence of secondary meaning, such as consumer surveys showing that consumers associate the asserted trade dress with Therabody. Rather, Therabody relies on circumstantial evidence such as its sales and advertising. Sales and advertisements, however, are only sufficient to show secondary meaning if they show that "the purchasing public had come to associate [Therabody's] trade dress of with [Therabody], as a single producer or source." *EFS Mktg.*, 76 F.3d at 490 (citing *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 78 (2d Cir. 1985)). Accordingly, Therabody must plead facts sufficient to show that its advertisements feature the trade dress as a source indicator and that its sales are a result of consumers associating the trade dress with Therabody. *Spark Indus., LLC v. Kretek Int'l, Inc.*, No. CV 14-5726, 2014 U.S. Dist. LEXIS 125538, at *40 (C.D. Cal. Aug. 28, 2014) (citing *Walker*, 549 F. Supp. 2d at 1180). Therabody,

however, only attempts to show secondary meaning through general advertising and sales of the product stating:

> Therabody has sold millions of dollars of products bearing its distinctive [trade dress]. It has spent millions of dollars to promote its products bearing its [trade dress]. Therabody products bearing the [trade dress] are used by numerous celebrities and professional athletes, have been the subject of extensive press and advertising, and have been used on the field during a Super Bowl and on the court during the NBA Finals. As a result of Therabody's extensive advertising and promotion and the widespread, and high profile, use of Therabody's [trade dress], including as described above, Therabody's [trade dress] is associated by the public exclusively with Therabody and its products and is used by the public as an indicator of the origin and quality of Therabody's percussion massage devices.[4]

(ECF No. 1 at ¶20; *see also* ¶27.) This conclusory pleading involving general sales and marketing falls far short of the mark.

Because Therabody has failed to plead facts showing that its sales or advertisements are related to the asserted trade dress as a source identifier, Therabody has failed to plausibly show that its trade dress has obtained any secondary meaning. *See Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12 civ 3599, 2012 U.S. Dist. LEXIS 110974, at *20 (S.D.N.Y. Aug. 7, 2012) (dismissing plaintiff's trade dress claim where plaintiff failed to allege, *inter alia*, facts showing secondary meaning).

## B.    Therabody Has Failed to State a Claim for Patent Infringement

### 1.    Factual Background

Therabody has alleged that the HoMedics Percussion Massager infringes four utility patents—the '448 Patent and U.S. Patent Nos. 10,918,565 (the "'565 Patent"), 10,857,064 (the "'064 Patent"), and 11,160,722 (the "'722 Patent") (collectively the "Asserted Utility Patents"). (ECF No. 1 at ¶¶92-148.) While there are some minor differences between the Asserted Utility Patents, they are all generally directed to a

---

[4]  While this paragraph of the complaint refers to the alleged Blue Trade Dress, Therabody's allegations for the Triangle Trade Dress are identical, merely omitting the reference to the Super Bowl and NBA Final. (ECF No. 1 at ¶¶20, 27.) That Therabody is relying on the same allegations for two distinct trade dress allegations further supports the argument that Therabody has not pleaded facts showing that its sales and advertising were focused on the alleged trade dress.

percussive massage device and/or a method for using the same. (ECF Nos. 1-1, 1-2, 1-3, and 1-4.) Therabody alleges both direct and indirect, *i.e.*, inducement and contributory, infringement.

With respect to direct infringement, Therabody alleges that the HoMedics percussion massager infringes at least claim 6 of the '448 Patent, at least claim 1 of the '565 Patent, at least claim 2 of the '064 Patent, and at least claim 12 of the '722 Patent. (ECF No. 1 at ¶¶94, 108, 121, and 136.) Each of these claims is directed to a percussion massager and requires, *inter alia*, that (1) the percussion massager contain a handle comprised of three portions that create a handle opening (in all but the '064 Patent, the claim requires the handle opening to be in the shape of a triangle) and (2) that a user can independently grasp any of the three portions. (ECF No. 1-1 at claim 6; ECF No. 1-2 at claim 1; ECF No. 1-3 at claim 2; ECF No. 1-4 at claim 12.) According to Therabody, the HoMedics Percussion Massager contains these elements as shown below:



(ECF No. 1 at ¶95.) A closer inspection of the HoMedics Percussion Massager, however, shows that it actually does not meet either of these limitations. More specifically, as shown in the image below, the handle opening in the HoMedics Percussion Massager is a semioval, not a triangle. Because of the semiovular shape of the handle opening it is impossible for a user to grasp what Therabody refers to as the first handle portion and third handle portion independently.



Rather, when a user attempts to grasp the first handle portion they necessarily grasp at least part of the third handle portion and *vice versa*. This is demonstrated in the image below from the HoMedics website:[5]



Therabody also alleges that HoMedics has induced infringement of and contributorily infringed the Asserted Utility Patents. (ECF No. 1 at ¶¶99, 100, 113, 114, 128, 129, 143, and 144.) Therabody does not provide any details regarding this alleged indirect infringement. Rather, for each of its inducement claims Therabody merely makes the following identical allegations:

> On information and belief, at least since Plaintiff's December 15, 2021 email, Defendants have knowingly and actively induced the infringement of one or more of the [asserted patent] claims by, inter alia, marketing, promoting, and offering for use the Infringing Product, knowingly and intending that the use of the Infringing Product by Defendants' customers and by users infringes the [asserted patent]. For example Defendants intend to induce such infringement by, among other things, promoting

---

[5] This the same website where Therabody appears to have obtained the image of the HoMedics Percussion Massager included in its Complaint.

> users to purchase and use the Infringing Product knowing that its purchase and use infringes one or more claims of the [asserted patent].

(ECF No. 1 at ¶¶99, 113, 128, and 143.) Similarly, for each of its contributory infringement claims Therabody makes the following identical allegations:

> On information and belief, at least since Plaintiff's December 15, 2021 email, Defendants have contributed to the infringement of the [asserted patent] by their customers and users of the Infringing Product by, inter alia, making, offering to sell, selling and/or importing into the United States, a component of a patented machine, manufacture or combination, or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringing the [asserted patent]. The Infringing Product is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the [sic] infringe the [asserted patent]. As a result, Defendants' Infringing Product has been used by its customers and by users to infringe the [asserted patent]. Defendants continue to engage in acts of contributory infringement of the [asserted patent] even after receiving notice of its contributory infringement.

(ECF No. 1 at ¶¶100, 114, 129, and 144.) While Therabody relies on its December 15, 2021 email to HoMedics to support its knowledge allegations, Therabody fails to mention that its email did not provide any specifics regarding the infringement. Rather, the email merely stated that the HoMedics Percussion Massager infringed one or more of a number of patents that could be found on Theragun's website:

> Therabody's patents and design registrations directed to percussive massage devices and attachments for its percussive massage devices include U.S. Patent Nos. 10,702,448, 10,857,064, 11,160,722, D849,260, including but not limited to the patents and design registrations listed under "Patents and Design Registrations" on www.therabody.com and www.theragun.com (collectively, "Percussive Massage Patents").

> It has recently come to our attention that HOMEDICS and/or its affiliates (collectively, "You" or "Your") are manufacturing, using, offering to sell, importing and/or selling percussive massage devices at www.HOMEDICS.COM which appears to infringes [sic] one or more of the the [sic] Percussive Massage Patents. The infringing percussive massage devices and attachments are shown in the below EXHIBIT A and are referred to by You, in one instance, as the "Therapist Select DuoTemp Pro Percussion Massager" (collectively, the "Infringing Device").

(Exhibit A.[6]) Put another way, Therabody only informed HoMedics of the existence

---

[6] It is appropriate for the Court to consider this email in deciding the motion to dismiss because it is discussed in the complaint, it is central to Therabody's indirect

of its patents along with a vague allegation of infringement. It never identified which patents HoMedics allegedly infringed or how HoMedics infringed those patents. Therabody also filed this lawsuit a week after sending the email, *i.e.*, without giving HoMedics adequate time to respond to the email's vague allegations.

### 2.   Legal Standard

Direct patent infringement requires that someone make, use, offer to sell, or sell a patented invention in the United States. 35 U.S.C. § 271(a). A party directly infringes an apparatus or system claim if the product contains each and every element of the claim. *Uniloc USA v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011). Thus, to plead direct infringement, "the complaint must provide factual content indicating that the accused product infringes each limitation of at least one claim of the patent in suit." *Mosaic*, 2020 U.S. Dist. LEXIS 174997, at *9 (citation omitted). *See also Novitaz, Inc. v. inMarket Media, LLC*, No. 16-cv-06795, 2017 U.S. Dist. LEXIS 81491, at *6-*7 (N.D. Cal. May 26, 2017) ("[A] complaint does not satisfy the standards of *Twombly* and *Iqbal* where it does not at least contain factual allegations that the accused product practices every element of at least one exemplary claim.").

"Pleading indirect patent infringement requires allegations sufficient to show that the defendant had knowledge of the patents at issue, as well as 'knowledge that the induced acts constitute patent infringement.'" *Versata Software v. Configit A/S*, No. LA CV20-09019, 2021 U.S. Dist. LEXIS 230444, at *40 (C.D. Cal. Sep. 10, 2021) (quoting *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66, (2011)). "Under *Glob.-Tech*, '[t]o survive [a] motion to dismiss,' the operative complaint 'must contain facts plausibly showing that [the defendants] specifically intended their customers to infringe the [asserted] patent and knew that the customer's acts constituted infringement.'" *Id.* (quoting *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)).

infringement claim, and to HoMedics' knowledge there are no questions regarding its authenticity. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that "material or apparatus" is material to practicing the invention, has no substantial non-infringing uses, and is known by the party "to be especially made or especially adapted for use in an infringement of such patent." *Bill of Lading*, 681 F.3d at 1337 (citing 35 U.S.C. § 271 (c); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005)). Thus "[i]n order to state a claim for contributory infringement, a complaint must further plead (in addition to knowledge) that the accused product 'has no substantial non-infringing uses, and is known by the [defendant] to be especially made or especially adapted for use in an infringement' of the patents-in-suit." *Software Research, Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1135-36 (N.D. Cal. 2018) (citing *Bill of Lading*, 681 F. 3d at 1337).

### 3. Argument

#### a. Therabody Failed to Plausibly Allege Direct Infringement

Therabody alleges that the HoMedics Percussion Massager infringes the Asserted Utility Patents because a user can grasp each portion of the handle independently. (*See*, *e.g.*, ECF No. 1 at ¶95.) As shown in the image above, however, this is simply not true. Rather, as a result of the curved design of the bottom portion of the handle in the HoMedics Percussion Massager, an adult user would not be able to grasp what Therabody refers to as the first or third portion independently. Rather a user attempting to grasp the first portion would find part of his hand on the third portion and a user attempting to grasp the third portion would find part of his hand on the first portion. Thus the HoMedics Percussion Massager simply does not and cannot meet this limitation. As such, Therabody cannot ***plausibly*** plead that the HoMedics Percussion Massager meets this claim limitation and cannot state a claim for direct infringement of the Asserted Utility Patents. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (Although "[a]ll allegations of material fact are taken as

true and construed in the light most favorable to the nonmoving party," a "court need not [] accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.").

      **b.**    **Therabody's Indirect Infringement Claims Are Nothing More Than a Recitation of the Elements of the Claims**

Therabody also utterly fails to allege any facts whatsoever to support its inducement and contributory infringement claims instead merely providing a formulaic recitation of the elements of each claim. For example, with respect to inducement, Therabody pleads no facts that HoMedics "knew that the customer's acts constituted infringement." Indeed, it would be impossible for Therabody to plead such facts as it has not even identified the customer acts that allegedly constitute infringement. As a result, HoMedics is left guessing as to what conduct of its customers constitutes infringement. And there are no facts pleaded showing that HoMedics knew there was infringement because, as explained above, Therabody's email to HoMedics did not sufficiently identify the alleged infringement. Simply, there are no facts pleaded regarding the knowledge of infringement requirement. *See*, *e.g.*, *Wistron Corp. v. Phillip M. Adams & Assocs., LLC*, No. C-10-4458, 2011 U.S. Dist. LEXIS 102237, at *17 (N.D. Cal. Sep. 12, 2011) (dismissing a claim for induced infringement where plaintiff "fail[ed] to plead nonconclusory facts establishing a plausible claim of knowledge").

Moreover, the fact that HoMedics may have known of the patents due to Therabody's email is simply insufficient to show that HoMedics knew of the alleged infringement. *See*, *e.g.*, *United States Ethernet Innovations, LLC v. Netgear, Inc.*, No. C 13-2262, 2013 U.S. Dist. LEXIS 113531, at *11 (N.D. Cal. Aug. 12, 2013) (an allegation that defendant was aware of the patents was not enough to state a claim for inducement without an allegation that defendant "knew that the acts that it encouraged its customers to take constituted infringement thereof").

Therabody also pleads no facts showing that HoMedics had a specific intent that its customers infringe. Therabody's sole allegation in this regard—made "on information and belief"—is that HoMedics "promot[ed] users to purchase and use the Infringing Product knowing that its purchase and use infringes one or more claims [of the Asserted Utility Patents]." (ECF No. 1 at ¶¶99, 113, 128, and 143.) This is insufficient to plead a claim of inducement of infringement. *In re Bill of Lading*, 681 F.3d at 1339; *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305-06 (Fed. Cir. 2006).

Therabody's contributory infringement allegations fare no better. In its Complaint, Therabody alleges "on information and belief" that HoMedics sells "a component" without identifying what that component is. (ECF No. 1 at ¶¶100, 114, 129, and 144.) How can HoMedics possibly know what it is being accused of if it doesn't know which "component" it is selling that constitutes contributory infringement? Therabody then alleges, without support, that HoMedics sold the unnamed "component" "knowing the same to be especially made or especially adapted for use in infringing [the Asserted Utility Patent]." (*Id.*) Yet for the reasons explained above, Therabody has pleaded no facts from which it can be plausibly inferred that HoMedics knew it was selling an unnamed "component," particularly given that Therabody's alleged notice to HoMedics contained no details regarding the alleged infringement. Therabody also alleges that the HoMedics Percussion Massager "has been used by its customers and by users to infringe the [Asserted Utility Patent]." (*Id.*) Again, this is nothing more than a conclusory statement that is not supported by a single factual allegation. Indeed, nowhere in the Complaint does Therabody explain how HoMedics' customers and users of the unnamed "component" sold by HoMedics infringe any of the claims of the Asserted Utility Patent. Finally, Therabody makes the conclusory statement that the HoMedics Percussion Massager is not suitable for a substantial non-infringing use without a single factual allegation supporting that statement. *See N. Atl. Imps., LLC v. Nexgrill Indus.*, No. 19-01195, 2020 U.S. Dist.

LEXIS 39729, at *7-*8 (C.D. Cal. Jan. 23, 2020) (dismissing contributory infringement claim based on allegations nearly identical to the allegations here as nothing more than a formulaic recitation of the claim); *Wiston*, 2011 U.S. Dist. LEXIS 102237, at *17 (dismissing contributory infringement claim for failure to identify the components or plead facts alleging knowledge).

Based on the foregoing, it is clear that Therabody's indirect infringement allegations are nothing more than a "formulaic recitation of a cause of action's elements," a form of pleading that is specifically prohibited by *Twombly* and that falls far short of the Federal Circuit's directive for pleading indirect infringement in *Bill of Lading*. As such, Therabody has failed to state a claim for indirect infringement.

## C.   Therabody Has Failed to State a Claim for Design Patent Infringement

### 1.   Factual Background

Therabody also alleges that the HoMedics Percussion Massager infringes eleven Asserted Design Patents, numbers D921,914, D880,714, D880,715, D885,601, D887,573, D880,716, D896,396, D879,985, D879,986, D884,915, (collectively the "Massager Design Patents") and D849,260 (the "Element Design Patent"). (ECF No. 1 at ¶¶149-269.) The Massager Design Patents are all directed to a percussion massager with the same general design which is shown below:



(ECF No. 1 at ¶151.) As can be seen from the image above, the percussion massager of the Massager Design Patent consists of a triangle-shaped handle, a circular head, and an arm protruding from the head. The head of the percussion massager is in line with the top portion of the handle and does not protrude. Moreover, the handle opening is in a triangle shape and the handle has no protruding pieces. The HoMedics

Percussion Massager is significantly different than the massager of the Massager Design Patents as shown in the image below:



As can be seen, in the HoMedics Percussion Massager the head is not in line with the top part of the handle but rather is raised. The handle does not form a triangle but rather forms a semicircle. And there is an extra portion of the handle that protrudes from the end of the handle opposite the head. In short, beyond some superficial similarities necessitated by function the HoMedics Percussion Massager is simply not similar to the massagers of the Massage Design Patents.

Therabody ignores these substantial differences instead alleging infringement based on (1) the triangle portion, (2) the rounded head portion, (3) the cylindrical nozzle extending from the rounded head portion, and (4) the same relative dimensions of the head portion to the nozzle. (ECF No. 1 at ¶¶151, 162, 173, 184, 195, 206, 217, 228, 239, and 250.) As an initial matter, for the reasons discussed above with respect to Therabody's trade dress, each of these alleged similarities is functional. But more relevant here, these similarities are simply far outweighed by the differences.

The other design patent asserted by Therabody is directed to a massage element. This element along with the allegedly infringing HoMedics product are shown below:



(ECF No. 1 at ¶261; annotations added.) As can be seen, there are again significant differences between the element of the design patent and the HoMedics element. More specifically, the element of the design patent contains thick bands at the outermost part of each tier (shown in blue) while the HoMedics product contains only a thin line. The base of the element from the design patent (shown in yellow) is nearly as wide as the bottom of the second tier while the base of the HoMedics element is significantly narrower than the bottom of the second tier. As a result, the portion from the bottom of the second tier to the base (shown in red) is longer and becomes narrower than the corresponding area in the element of the design patent. Again, however, Therabody ignores these differences and alleges that the products are similar because of the similarity between the tiers. (*Id.*)

Therabody also alleges that HoMedics has induced infringement of each of the Asserted Design Patents, using the nearly the same allegations Therabody made for the Asserted Utility Patents. (ECF No. 1 at ¶¶154, 165, 176, 187, 198, 209, 220, 231, 242, 253, and 264.) Indeed, like its inducement allegations for the Asserted Utility Patents, Therabody fails to allege any facts showing that HoMedics' customers infringe the Massager Design Patents by using the HoMedics Percussion Massager or that HoMedics specifically intended its customers to infringe the Asserted Design Patents. Rather, Therabody merely states that HoMedics sold its product "knowing that its purchase and use infringes one or more claims of the [Asserted Design Patent]." (*Id.*) Therabody also alleges contributory infringement, but like with its contributory infringement allegations for the Asserted Utility Patents, Therabody fails to plead a single fact showing that HoMedics knew that its Percussion Massager was especially made or adapted to infringe the Asserted Design Patent or that its Percussion Massager did not have any substantial non-infringing uses. (ECF No. 1 at ¶¶155, 166, 177, 188, 199, 210, 221, 232, 243, 254, and 265.) Unlike its indirect infringement claims for the Asserted Utility Patents, Therabody does not allege that

HoMedics had any presuit knowledge of the Asserted Design Patents. (*See*, *e.g.*, ECF No. 1 at ¶¶154, 155.)

## 2.     Legal Standard

The applicable test for infringement of a design patent is the ordinary observer test under which "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham Manufacturing Co. v. White*, 81 U.S. 511, 528 (1872). Over the years, the Federal Circuit has heightened the abilities of an ordinary observer. Specifically, the patent owner must establish that "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (emphasis added); *Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665, 677 (Fed. Cir. 2008) (*en banc*). For the "ordinary observer" test, the claimed design is compared side-by-side with the accused design. *Arminak and Associates v. Saint-Gobain Calmar,* 501 F.3d 1314, 1320 (Fed. Cir. 2007). In deciding a motion to dismiss a claim for design patent infringement the court can apply the ordinary observer test. *See Curver Lux., SARL v. Home Expressions Inc.*, 938 F.3d 1334, 1343 (Fed. Cir. 2019) (affirming the district court's dismissal of a design patent infringement claim under Rule 12(b)(6) using the ordinary observer test); *Anderson v. Kimberly-Clark Corp.*, 570 Fed. Appx. 927, 933 (Fed. Cir. 2014) (same); *Performance Designed Prods. LLC v. Mad Catz, Inc.*, No. 16cv629, 2016 U.S. Dist. LEXIS 84848, at *19 (S.D. Cal. June 29, 2016) (granting a motion to dismiss under Rule 12(b)(6) using the ordinary observer test).

## 3.     Argument

Here an ordinary observer would not consider that the products of the Asserted Design Patents and the HoMedics Percussion Massager to be substantially the same.

Indeed, as discussed above, there are substantial differences between the Massager Design Patents and the HoMedics Percussion Massager and between the Element Design Patent and the element sold with the HoMedics Percussion Massager. As a result, an ordinary observer would not believe that the products were substantially similar and would not believe the HoMedics Percussion Massager and element are the same as the massager and element of the Asserted Design Patents.

Indeed, courts have dismissed claims based on the ordinary observer test where the products were more similar than the products at issue here. For example, in *Performance Designed*, the court considered whether a video game controller infringed a design patent. 2016 U.S. Dist. LEXIS, at *9-*14. Images of the controller and design patent are shown below:

  

*Id.* After comparing the images the court dismissed the design patent infringement claim. *Id.*, at *14-*15. In particular, the court noted that the product of the design patent was rounded while the accused product had sharper angles. *Id.*, at *11-*12. The plaintiff in *Performance Designed* attempted to argue that the differences were "trivial and minor," but the court disagreed stating that there were numerous differences such that "when viewing the designs as a whole, it would be clear to an ordinary observer that the two designs were plainly dissimilar." *Id.*, at *14-*15 (quotation omitted). The plaintiff also argued that the products were similar based on the asymmetric design and trapezoidal shape. *Id.* The court rejected that argument stating that relying on those similarities would "require the Court to look at these ornamental features in isolation, which is procedural error." *Id.* (citing *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015)).

Here, Therabody, like the plaintiff in *Performance Designed*, focuses on a few discrete similarities and overlooks the myriad differences between the HoMedics Percussion Massager/element and the Asserted Design Patents, as well as the overall look of the two massagers/elements. When the products are looked at in their entireties it is clear that they are plainly dissimilar for the reasons explained above.

In addition, Therabody's indirect infringement claims (*i.e.*, inducement and contributory infringement) fail for the same reasons discussed above with respect to the Asserted Utility Patents. *See supra* section III.B.3.b.

Based on the foregoing, Therabody has failed to state a claim for design patent infringement and its claims should be dismissed pursuant to Rule 12(b)(6).

## D.   Therabody's Unfair Competition Claim Fails

Therabody's final claim is for unfair competition under Cal. Bus. & Prof. Code §17200. (ECF No. 1 at ¶¶271-73.) This claim is based on HoMedics' alleged trade dress and patent infringement. (*Id.* at ¶271.) Since Therabody has failed to state a claim for trade dress or patent infringement as discussed herein, Therabody's unfair competition claim must fail. Further, to the extent that Therabody's unfair competition claims are based on HoMedics' alleged patent infringement, these claims fail because they are preempted by the Patent Act. *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. CV 15-769, 2015 U.S. Dist. LEXIS 188274, at *24 (C.D. Cal. May 8, 2015).

## IV.   CONCLUSION

For the foregoing reasons, HoMedics respectfully requests the Court dismiss Therabody's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

By: /s/ William E. Thomson, Jr.
William E. Thomson, Jr. (SBN 47195)
wthomson@brookskushman.com
445 S. Figueroa Street, Suite 3100
Los Angeles, CA 90071-1635
Tel: (213) 622-3003

Mark A. Cantor (*Pro Hac Vice* forthcoming)
mcantor@brookskushman.com
Rebecca J. Cantor (*Pro Hac Vice* forthcoming)
rcantor@brookskushman.com
Marc Lorelli (*Pro Hac Vice* forthcoming)
mlorelli@brookskushman.com
1000 Town Center, 22nd Floor
Southfield, MI 48075
T: (248) 358-4400 / F: (248) 358-3351

Dated: April 6, 2022

*Attorneys for Defendant*